## Franklin Trust Company v. Hegh.

*Fraudulent debtors' attachments — Stolen money — Motion to dissolve—
Motion to quash—Affidavit for writ—Acts of March 17, 1869, and May 24,
1887.*

1. Any defect in an attachment under the Fraudulent Debtor's Act of March 17,
1869, P. L. 8, as amended by the Act of May 24, 1887, P. L. 197, is waived by
defendant in entering an appearance and moving to dissolve.

2. Under the act a fraudulent debtor's attachment may issue where the debt
was fraudulently contracted or where the defendant is about to remove his prop-
erty beyond the jurisdiction; these grounds are independent of each other, and
both need not exist to enable the plaintiff to issue the writ.

3. A fraudulent debtor's attachment may issue to recover money stolen; the
duty to return it constitutes an indebtedness contemplated by the act.

4. Where the attachment is based upon the intended removal of property
beyond the jurisdiction, an allegation in the language of the act is sufficient.

5. The affidavit upon which the attachment is based may be made on informa-
tion and belief, without an averment of the sources of information or expectation
of ability to prove the facts alleged.

Rule to quash and dissolve attachment. C. P. No. 1, Phila. Co., March T.,
1925, No. 299.

*Saul, Ewing, Remick & Saul,* for plaintiff.

*John R. K. Scott* and *William T. Connor,* for defendant.

TAULANE, J., June 23, 1925.—This is a rule to quash and dissolve an attach-
ment issued under the Fraudulent Debtors' Act of March 17, 1869, P. L. 8, as
amended by the Act of May 24, 1887, P. L. 197.

No reason is assigned why the attachment should be quashed. The proceed-
ings seem to be regular, and any defect in the proceedings has been waived by
the defendant in entering an appearance and moving to dissolve the attach-
ment: Love-Thompson Co. *v.* Brass, 70 Pitts. L. J. 501. The motion to quash
must be overruled.

Should the attachment be dissolved?

No answer has been filed or depositions taken. The defendant moves to
dissolve on the ground that the affidavit in support of the attachment is insuffi-
cient, and points out a number of instances wherein the affidavit is defective.

The plaintiff bases its right to an attachment, not upon the ground that the
debt was fraudulently contracted, but because the defendant is about to move
his property out of the jurisdiction of the court with intent to defraud his
creditors, &c.

A creditor is entitled to an attachment under the Act of 1869, as amended
by the Act of 1887, either where the debt was fraudulently contracted or where
the defendant is about to move his property without the jurisdiction of the
court with intent to defraud his creditors, &c. These grounds are independent
of each other, and both need not exist to enable a plaintiff to issue an attach-
ment: Boyd *v.* Lippincott, 19 Phila. 241, 247.

Where the debt has not been fraudulently contracted, the act only requires
that the affidavit shall state the nature and amount of the indebtedness. The
plaintiff's affidavit avers that the indebtedness is $27,000, and represents
moneys of the plaintiff which had been stolen from it by George R. Hutchin-
son, one of its employees, and received by the defendant without consideration.
It is true that the affidavit alleges that the defendant received the moneys
from Hutchinson "fraudulently and otherwise illegally." These words are
mere surplusage, because the defendant is liable to the plaintiff if Hutchinson

stole money from the plaintiff and turned it over to the defendant without consideration.

It is well settled that if A steals money from B and gives it to C without consideration, B may waive the tort and maintain an action against C for money had and received.

In Woodward on Quasi-Contracts, 450, it is said: "One who receives money which has been wrongfully taken from its owner, either with notice of the wrong or without paying value, may be sued for money had and received."

In Bayne v. United States, 93 U. S. 642, the United States sought to recover money received by the defendant under the following circumstances: The Government had given a draft to a paymaster in the army, and the paymaster, after depositing the same in his official capacity in a bank designated as a public depository, drew checks payable to the order of Bayne & Co., who collected the same. It was held that the Government was entitled to recover from Bayne & Co. the amount received by Bayne & Co. on said checks.

In Hindmarch v. Hoffman, 127 Pa. 284, S stole from H, the plaintiff, $400, which he deposited with X, the defendant, to be returned to S or upon S's order. X, the defendant, did not know of the theft until notified by H, the plaintiff. Notwithstanding notice of the theft, X, the defendant, paid the money to the holder of an order from S, the thief. In an action by H, the plaintiff, against X, the defendant, it was held the plaintiff was entitled to recover in an action for money had and received. The court said, on page 287: "As found by the learned judge, the money sued for as money had and received by defendant to the use of the plaintiff never belonged to Savanack, nor could he have legally recovered any part of it. On the contrary, it was plaintiff's money, stolen from him by Savanack, and by the latter left with the defendant. While it was thus in his custody and under his control, he was fully informed of the theft, and also that plaintiff, as owner of the money, claimed it. Under these circumstances, it was clearly his duty to hold it for plaintiff, and, upon satisfactory proof of ownership, to pay it over to him. From the existence of that duty the law raised an implied promise by defendant to do so, but, in disregard of his duty in the premises, he paid it over, on the order of the thief, to parties who had no right whatever to receive it. Justice demands that he should now be compelled to pay the amount to the rightful owner, and there is no good reason why it should not be recovered in the present form of action."

There is no doubt that an attachment under the Fraudulent Debtors' Act may be issued to recover money stolen, and the duty to return it constitutes an indebtedness contemplated by the act: Mechanics' National Bank v. Miners' Bank, 13 W. N. C. 236; Love-Thompson Co. v. Brass, 70 Pitts. L. J. 501; Maitland Driving Park Ass'n v. Fisk, 3 Lacka. Leg. News, 210, and O'Neill v. Brown, 17 Dist. R. 1062. We are of the opinion that the nature and the amount of the indebtedness are sufficiently set forth.

As the right to the attachment is based on the allegation that the defendant is about to move his property without the jurisdiction of the court, &c., and the allegation is in the language of the act, it is sufficient: Sharpless v. Ziegler, 92 Pa. 467.

The defendant alleges that the affidavit is fatally defective because it is based merely upon information and belief, without any allegation of the sources of the affiant's information or that the affiant expects to be able to prove the averments of the affidavit at the trial. To sustain his contention the defendant cites the recent case of Wolf v. Zentz, 5 D. & C. 276, which, no doubt, supports his contention. The case merely follows the opinion of Judge Wall-

ing in Ross *v.* Behringer, 21 Pa. C. C. Reps. 260. We are unable to agree with the opinion in either of these cases, and we believe the correct rule was laid down by this court in Boyd *v.* Lippincott, 19 Phila. 241, where we held that an affidavit under the Fraudulent Debtors' Act may be made on information and belief. The Fraudulent Debtors' Act requires the plaintiff to file an affidavit, and it has been a practice of long standing that an affidavit to a statement of claim, bill in equity or petition is sufficient when made upon the plaintiff's knowledge, information and belief. Judge Walling relies upon the cases which hold that an affidavit of defence based on information and belief must aver that the defendant expects to be able to prove the averments at the trial. The reason of this requirement as to an affidavit of defence is, no doubt, due to the fact that the original idea of an affidavit of defence was to search the conscience of the defendant, and permit the entry of judgment promptly unless the defendant could show a real defence. No such reason or necessity exists where an affidavit is made by the plaintiff.

We have carefully considered the various reasons assigned by the defendant for dissolving the attachment and find that they are without merit.

And now, to wit, June 23, 1925, the rule to quash and dissolve the attachment is discharged.